(No. 6583.   March 9, 1939.)

HERBERT A. NEALE, Respondent, v. H. J. WEAVER
and STATE INSURANCE FUND, Appellants.

[88 Pac. (2d) 522.]

42

Carroll F. Zapp and Clarence L. Hillman, for Appellants.

Rayborn and Rayborn, for Respondent.

GIVENS, J.—Appellant Weaver, produce dealer, had a warehouse at Filer where respondent was employed. February 10, 1936, at noon, preparatory to going to lunch respondent went to his automobile parked by a tin warehouse used by Weaver for storing sacks. This parking space on appellant's premises was not particularly provided for automobiles but was so used by employees and anyone doing business with appellant. Respondent, to start his car, choked the intake and used his right hand to hold a cable where a steel wire ran through the mechanism. He had a pair of pliers in his left hand which slipped and struck his hand on the choke, puncturing the skin on his left thumb. Respondent went home, secured his lunch, returned and helped pitch 15 pound sacks of potatoes into a truck. Towards evening his hand troubled him and on the 13th he saw a doctor, his thumb being infected; on the 15th he was taken to a hospital,

his finger being gangrenous, and on March 11th the distal joint and part of the excess bone of the second joint was removed. He remained in the hospital until April 4th when he was discharged but his hand and lower arm continued stiff because of the infection.

It was respondent's usual custom to go back and forth at noon time for lunch. Appellant Weaver did not furnish the gas for respondent's automobile, had no control over the means of transportation and did not pay respondent for his time used in going home for lunch. No means or appliance connected with appellant's business contributed in any way to respondent's accident. It is contended this accident did not arise out of and in the course of the employment and the board so found, which order was reversed by the district court, hence this appeal.

Dr. Halley, called by respondent, testified as follows:

"Mr. LANGLEY: In your opinion what caused the infection that set in this man's thumb?

"A. The penetration of the foreign body, this foreign body and germs that were either present on the skin at that time or gained entrance into the wound later, staphylococcus and streptococcus causes the beginning of that, that infection.

"Mr. LANGLEY: Does that cover the matter you wanted to ask about?

"Mr. RAYBORN: I want to ask another question. A person receiving an injury such as you have outlined here and Mr. Neale gave you the history of having received, if he continued to work and handle onions and doing dirty work with his hands, would he not be more likely to get infection than he would if he had not worked after that time?

"Mr. ZAPP: I object to that as incompetent, irrelevant and immaterial and also speculative.

"Mr. LANGLEY: Objection overruled.

"A. Yes, I think the likelihood of infection would be greater in an unprotected open wound with dirt being worked into it."

Cross-examination by Mr. Zapp:

"Q. When the hand was cut, the germ might have been present on the hand at the time of the cut and also on the wire that cut the hand?

"A. That's true.

"Q. It is very probable in this case too, isn't it?

"A. Anything that is exposed to the air and dirt and germs on it, probably that would be true.

"Q. You are not able to say with any degree of certainty when the germ entered the skin?

"A. No."

■■ This evidence of the inception of the infectious injury is too inconclusive to sustain the contention that the infection entered the wound in the afternoon while respondent was at work rather than at the time of the original puncture.

"To constitute an accident 'arising out of and in the course of employment,' there must be a probable, and not a possible, connection between cause and effect (*Nistad v. Winton Lumber Co. et al.*, 59 Ida. 533, 85 Pac. (2d) 236; *Beaver v. Morrison-Knudsen Co.*, 55 Ida. 275, 297, 41 Pac. (2d) 605; *Croy v. McFarland-Brown Lumber Co.*, [51 Ida. 32, 1 Pac. (2d) 189], *supra; Larson v. Ohio Match Co.*, 49 Ida. 511, 289 Pac. 992). Tested by that rule, it is clear there is a failure of proof, in that it appears from the above quoted testimony of appellant's witnesses, by which he is bound, the infection *might* or *could* have been caused by appellant's having scratched his neck, and not that it was *probably* so caused." (*Brooke v. Nolan,* 59 Ida. 759, 87 Pac. (2d) 470, this term decided.)

Respondent contends because the accident, that is the puncture of the thumb, occurred on the premises of the employer, it constituted an accident which *ipso facto* arose in the course of and out of the employment.

It is true numerous cases have made the general statement to that effect, but on a careful examination and analysis of those cases we find there were in all an additional feature showing a causal connection between employment or the condition of the place or means or appliance furnished, or under the control of the employer, directly or indirectly and at least to some extent, however slight contributing to the accident, or tying it into or with the employment, which, in addition to the employee being on the premises of the employer at the time of the accident constituted a sufficient make-

weight to tip the scales and justifiably support the conclusion that the accident arose in the course of and out of the employment.

In *Burchett v. Anaconda Copper Min. Co.*, 48 Ida. 524, 283 Pac. 515, the accident occurred on a board walk constructed by and on the employer's premises, furnished for the main purpose of being used by the employees, and likewise the third judge of the majority, based his conclusion on the fact that the employee was at the time of the accident on his way to punch a time clock as required by the employer. In *Longhurst v. John Stewart & Son, Ltd.*, (1916) 2 K. B. 803, 32 T. L. R. 722, W. C. & I. Rep. 292, 9 B. W. C. C. 605 (affirmed 1917 App. Cas. 249), the therein quoted and supporting case, the circumstance of the accident showed more than mere presence on the employer's premises:

"The applicant was the widow of a workman who had been employed by the respondents, engineers and ship repairers, at work on a barge lying in a dock, the property of and under the control of the Port of London Authority. He left his work after it was dark, and while attempting to reach the gates which led from the docks on to the public road, fell into the water and was drowned. The public had not free access to the docks, and the respondent's workmen went in and out by permission of the dock authorities."

*In re MacKenzie,* 55 Ida. 663, 46 Pac. (2d) 73, the award in favor of the employee was expressly based on the finding of the board that:

" . . . . MacKenzie left the generator building to see how the work of cleaning the sump was getting on, and for the purpose of ascertaining what was the best thing to do in and about the situation then present, and then to do such best thing; that he did so 'with the intent to advance the work of emptying the sump' and to further the work and interests of his master, and not to satisfy idle curiosity."

*Dutson v. Idaho Power Co.*, 57 Ida. 386, 65 Pac. (2d) 720, expressly indicated that mere presence on the employer's premises was insufficient upon which to base liability:

" . . . . Nor are we prepared to hold that every accident which might occur on a private roadway of the employer, while the workman may be going to and from his work, would be compensable."

and emphasized the necessity of some additional feature:

"In *Logue v. Independent School Dist. No. 33*, 53 Ida. 44, 21 Pac. (2d) 534, and *Murdoch v. Humes & Swanstrom*, 51 Ida. 459, 6 Pac. (2d) 472, this court enumerated a state of facts under which we held that liability for compensation attached. In *Walker v. Hyde*, 43 Ida. 625, 253 Pac. 1104, 1105, while the majority of the court reached the conclusion that the facts there involved were not compensable, still both the majority and minority opinions recognized the rule stated in *Logue v. Ind. School Dist., supra*, the majority opinion saying: 'Under the *facts in this case* it is not material that the accident occurred on the premises where the operations were being carried on, *unless it was over a way provided by the employer, which the employee was required to travel, so that he was under the domination of the employer.*' "

Thus that case was bottomed on the fact that the roadway which because of the slope thereof caused the accident was one furnished by the employer on its premises and maintained by him for the use of the employees, constituting the only means of ingress and egress to the exact place of employment.

It was the hazard of the only practical means of ingress and egress to the employer's premises across a railroad track which supported compensation in *Bountiful Brick Co. v. Giles*, 276 U. S. 154, 48 Sup. Ct. 221, 72 L. ed. 507, 66 A. L. R. 1402:

" . . . . Since the only way of access to its brickyard from the east was across the railway tracks, the company necessarily contemplated the crossing of them by its employees. No definite line of travel being indicated by the company or followed by the employees, who, with the company's full knowledge and acquiescence, habitually crossed wherever they saw fit, it results that, however the crossing was made, the risk thereby incurred was reasonably incidental to the employment and became annexed as an implied term thereof."

In *Butler's Case*, 128 Me. 47, 145 Atl. 394, the court said:

"That the course of his employment covers the period between the workman's entering his employer's premises, and his leaving them within a reasonable time after his day's work is done, is settled in *Robert's Case*, 124 Me. 129, 126 Atl. 573.

"As to time and place of the accident, the employee is within the coverage of the statute."

But the accident arose because of this situation:

"Further, that in front of the car, as it stood when the employee at the end of the day's work approached it, was a three-foot drop in the ground, and about eight feet distant therefrom the wall of the factory building.

"That, failing to set the engine of his car in motion by means of the starter, the employee pulled up the emergency brake and proceeded to 'crank' the car; that the car rolled forward, took the drop, and pinned its man against the building, breaking his wrist."

Thus it was the condition of the place where the accident occurred as conducted by and for which the employer was responsible which justified recovery.

The cases cited in 71 C. J., p. 716, sec. 445, include *Burchett v. Anaconda Copper Min. Co., supra,* and will be found with the exception of the authorities from Texas to have as a partial basis for the holding some such situation as above noted in *Burchett v. Anaconda Copper Min. Co., supra.*

*Petroleum Casualty Co. v. Green,* (Tex. Civ. App.) 11 S. W. (2d) 388, and *Federal Surety Co. v. Ragle,* (Tex. Com. App.) 40 S. W. (2d) 63, squarely support respondent and do so merely on the ground that the accident occurred on the premises of the employer.

These cases have been referred to by some twenty-five subsequent decisions of the various courts of Texas[1] but have

---

[1] *Maryland Casualty Co. v. Smith,* (Tex. Civ. App.) 40 S. W. (2d) 913; *United States Fidelity & Guaranty v. Cooper,* (Tex. Civ. App.) 14 S. W. (2d) 342; *Federal Surety Co. v. Ragle,* (Tex. Civ. App.) 25 S. W. (2d) 898; *Texas Employer's Ins. Assn. v. Herron,* (Tex. Civ. App.) 29 S. W. (2d) 524; *Aetna Life Ins. Co. v. Matthews,* (Tex. Civ. App.) 47 S. W. (2d) 667; *Texas Indemnity Ins. Co. v. Clark,* (Tex. Civ.

not been followed to the extent of the holding therein on the point involved herein but only in support of a liberal construction of the statute generally and were so cited by this court in *Murdoch v. Humes & Swanstrom*, 51 Ida. 459, 6 Pac. (2d) 472, wherein it was conceded the employee was killed when carrying on the master's business.

The evidence being insufficient to show the injury occurred in the afternoon's employment rather than at the time of the original puncture, and since at the time of the original puncture respondent was engaged in nothing relative to the furtherance of his employment and using no means or instrumentality furnished by or under the control of the employer or in any way connected with his employment or the employer's business which in the slightest degree contributed to or affected the accident, the board's findings and conclusions denying compensation were correct.

Judgment of the district court is therefore reversed and the case is remanded for the order of the board to be affirmed.

Costs awarded to appellants.

Ailshie, C. J., and Budge, Morgan and Holden, JJ., concur.

App.) 50 S. W. (2d) 465; *Texas Employers Ins. Assn. v. Boecker*, (Tex. Civ. App.) 53 S. W. (2d) 327; *Fidelity Union Casualty Co. v. Carey*, (Tex. Civ. App.) 55 S. W. (2d) 795; *Erwin v. Texas Employers' Ins. Assn.*, (Tex. Civ. App.) 63 S. W (2d) 1076; *Texas Employers' Ins. Assn. v. Smith*, (Tex. Civ. App.) 75 S. W. (2d) 732; *Gallaher v. United States Fidelity & Guaranty Co.*, (Tex. Civ. App.) 77 S. W. (2d) 312; *Lehers v. Federal Underwriters Exch.*, (Tex. Civ. App.) 79 S. W. (2d) 925; *Viney v. Casualty Reciprocal Exch.*, (Tex. Civ. App.) 82 S. W. (2d) 1088; *Traders' & General Ins. Co. v. Nunley*, (Tex. Civ. App.) 80 S. W. (2d) 383; *Texas Employers' Ins. Assn. v. Andrews*, (Tex. Civ. App.) 83 S. W. (2d) 1059; *Texas Employers' Ins. Assn. v. Fritzmeier*, (Tex. Civ. App.) 85 S. W. (2d) 1079; *Red Arrow Freight Lines v. Gravis*, (Tex. Civ. App.) 84 S. W. (2d) 540; *Republic Underwriters v. Warf*, (Tex. Civ. App.) 103 S. W. (2d) 871; *Maryland Casualty Co. v. Wilson*, (Tex. Civ. App.) 108 S. W. (2d) 260; *Texas Indemnity Ins. Co. v. Williamson*, (Tex. Civ. App.) 109 S. W. (2d) 322; *Fritzmeier v. Texas Employers' Ins. Co.*, (Tex. Com. App.) 114 S. W. (2d) 236; *Texas Employers' Ins. Assn. v. Cobb*, (Tex. Civ. App.) 118 S. W. (2d) 375; *Indemnity Ins. Co. of North America v. Sloan*, 68 Fed. (2d) 222; *Great American Indem. Co. v. Dominguez*, 84 Fed. (2d) 179; *Central Surety & Ins. Corp. v. Howard*, 47 Fed. (2d) 1049.